<u>Not for Publication</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUPER 8 WORLDWIDE, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> SHREE KRISHINA, INC. and BOB PATEL (also known as BABU PATEL or BABUBHAI PATEL), <br><br> *Defendants.* | Civil Action No. 17-4588 (JMV) (JBC) <br><br> <u>OPINION</u> |

<u>**John Michael Vazquez, U.S.D.J.**</u>

This matter comes before the Court by way of motion for summary judgment brought by Plaintiff Super 8 Worldwide, Inc. ("Plaintiff" or "SWI") against Defendants Shree Krishina, Inc. ("SKI") and Bob Patel (also known as Babu Patel or Babubhai Patel) ("Patel") (collectively, "Defendants") as to the second, fourth, fifth, and sixth counts of Plaintiff's Complaint. D.E. 28. Defendants did not file opposition. The Court reviewed the parties' submissions[1] and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, the motion for summary judgment is **GRANTED in part and DENIED in part.**

---

[1] Plaintiff's brief in support of its motion for summary judgment is referred to as "Pl. Br." (D.E. 31-1). The motion is unopposed.

## I. BACKGROUND

### a. Factual Background[2]

Plaintiff Super 8 Worldwide, Inc. is a "guest lodging facility franchise system" that is incorporated in South Dakota and has its principal place of business in New Jersey. PSOMF ¶¶ 1-2. Plaintiff does not own or operate hotels itself, but instead operates the franchise system "comprised of federally-registered trade names, service marks, logos, and derivations thereof (the "Super 8® Marks"), as well as the distinctive Super 8® System." *Id.* ¶ 3. Defendant SKI is a Pennsylvania corporation. *Id.* ¶ 4. Defendant Patel is SKI's sole principal and a resident of Pennsylvania. *Id.* ¶ 5.

Plaintiff and SKI entered into a franchise agreement ("the Agreement") on or about May 11, 2011 "for the operation of a 101-room Super 8® guest lodging facility" located in Pennsylvania (the "Facility") for a twenty-year term. *Id.* ¶¶ 6, 8. Patel, as the sole principal of SKI, executed the Agreement on behalf of SKI. *Id.* ¶¶ 5, 7.

---

[2] The background facts are drawn from Plaintiff's Statement of Undisputed Material Facts ("PSOMF"), D.E. 20, and the Fenimore Affidavit ("Fenimore Aff.") and its accompanying exhibits, D.E. 31-2. In responding to Plaintiff's Statement of Undisputed Material Facts, Defendants failed to include supporting citations to the record for the paragraphs they denied. *See, e.g.*, D.E. 25-1 ("Def. Resp. to PSOMF") ¶¶ 40, 46, 47, 49, 50. Local Civil Rule 56.1 requires an opponent of a motion for summary judgment to provide a responsive statement of material facts. If an opponent denies any paragraphs in his responsive statement, he must "cit[e] to the affidavits and other documents submitted in connection with the motion." L. Civ. R. 56.1(a). A court may deem paragraphs that do not comply with requirements set forth in Local Civil Rule 56.1 as admitted. *See, e.g., 7-Eleven, Inc. v. Sodhi*, No. 13-3715, 2016 WL 3085897, at *2 n.5 (D.N.J. May 31, 2016) (concluding that paragraphs in which defendants "disagreed" without support to the record were deemed undisputed). Defendants clearly failed to comply with Local Civil Rule 56.1, which the Court previously noted in its December 30, 2019 Order. D.E. 30. The December 30, 2019 Order granted Defendants leave to cure the deficiencies in their responsive statement (as the Procedural History section explains), but Defendants did not cure the deficiencies or respond to the Court's Order in any manner. *Id.* Therefore, the Court deems paragraphs 40, 46, 47, 49, and 50 of Defendants' response to Plaintiffs Statement of Undisputed Material Facts as admitted.

2

Section 3.2 of the Agreement required SKI to "operate and maintain the Facility continuously after the Opening Date on a year-round basis as required by System Standards." Fenimore Aff., Ex. A. ¶ 3.2. Sections 7 and 18.3 and Schedule C of the Agreement required SKI to "make certain periodic payments to [Plaintiff] for royalties, service assessment fees, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees")." PSOMF ¶ 9. Specifically, SKI was required to pay Plaintiff a monthly combined fee, comprised of the monthly system assessment fee and the monthly royalty fee. *Id.* ¶¶ 10-16. Furthermore, the parties agreed under section 7.3 that interest would be payable on any past due amount to Plaintiff "at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." *Id.* ¶ 18.

It is undisputed that "Patel understood SKI's financial obligations under the Franchise Agreement." *Id.* ¶ 17; Def. Resp. to PSOMF ¶ 17. The Agreement also placed several other obligations on SKI, as the franchisee, including but not limited to submitting monthly reports to Plaintiff; maintaining accurate financial information; and allowing Plaintiff to audit, examine, and make copies of the Facility's books, accounts, and records. PSOMF ¶¶ 19-20.

Pursuant to section 11.2, Plaintiff could terminate the Agreement, with notice to SKI, "if SKI (a) discontinued operating the Facility as a Super 8® guest lodging establishment; and/or (b) lost possession or the right to possession of the Facility." *Id.* ¶ 21. In the event of termination, SKI agreed under section 12.1 that it would pay liquidated damages to Plaintiff at a rate of "$2,000.00 for each guest room of the Facility SKI was authorized to operate at the time of termination." *Id.* ¶¶ 22-23. Section 17.4 held that the non-prevailing party would pay costs and expenses incurred by the prevailing party to enforce or collect amounts owed under the Agreement. *Id.* ¶ 24. The parties agreed that the written Agreement superseded all previous oral or written

3

representations or agreements. *Id.* ¶¶ 25-26. The Agreement stated that SKI "understand[s] that the franchise relationship is an arms' length, commercial business relationship in which each party acts in its own interest." *Id.* ¶ 28.

On the same day Plaintiff and SKI entered into the Agreement, Patel also provided Plaintiff with a guaranty ("the Guaranty"). *Id.* ¶ 29. Patel personally executed the Guaranty. *Id.* ¶ 32. Patel agreed that upon a default under the Agreement, Patel would "immediately make each payment and perform or cause [SKI] to perform, each unpaid or unperformed obligation of [SKI] under the Agreement." *Id.* ¶ 30. Patel also agreed to pay the costs (including attorneys' fees) incurred by Plaintiff. *Id.* ¶ 31.

After being informed of a temporary closure of the Facility, Plaintiff sent a letter on March 10, 2016 acknowledging SKI's temporary closing from February 25, 2016 through August 6, 2016. *Id.* ¶ 33; Fenimore Aff., Ex. E. The Facility did not re-open on its scheduled date, August 7, 2016. PSOMF ¶¶ 33-34. As a result, Plaintiff notified SKI by letter dated September 14, 2016 that SKI was in default of its obligations under the Agreement and would be subject to termination if the Facility was not re-opened within thirty days. *Id.* ¶ 34; Fenimore Aff., Ex. F. Specifically, the letter indicated that SKI was in violation of Section 3.2 of the Agreement, stating that SKI must operate and maintain the facility continuously on a year-round basis. Fenimore Aff., Ex. F. SKI failed to reopen the Facility within the thirty days. PSOMF ¶ 35. As a result, Plaintiff sent SKI a letter on November 23, 2016 terminating the Agreement effective immediately "as a result of the Facility remaining closed without our consent" and as a result of SKI's lack of response to the September 14, 2016 letter. PSOMF ¶ 35; Fenimore Aff., Ex. G. In the termination letter, Plaintiff advised SKI that, pursuant to the Agreement, SKI was required to pay liquidated damages for

4

premature termination in the sum of $202,000.00 along with all outstanding Recurring Fees through the date of termination. *Id.*

Patel admits that he received the November 23, 2016 termination letter from Plaintiff and that "Defendants did not pay amounts owed to [Plaintiff]." *Id.* ¶¶ 37-38. Furthermore, despite additional requests from Plaintiff, "Defendants have not paid [Plaintiff] the outstanding Recurring Fees or liquidated damages due under the Franchise Agreement and Guaranty, nor have they paid any interest on these items." *Id.* ¶ 39.

The following facts were disputed by Defendants. Plaintiff states in paragraph 36 of its statement of material facts that "Patel admits he was aware that SKI was in default of its operational obligations," however the record does not clearly reflect such an admission. *See* PSOMF ¶ 36; D.E. 28-4, Ex. B at 46:17-48:16. The record shows that Patel understood what the September 14, 2016 letter meant and the consequences of not re-opening the Facility within thirty days, however the record does not reflect an admission that SKI was in default. *Id.* In Defendants' responsive statement, Defendants "object[] to this statement of facts as it contains legal conclusions." Def. Resp. to PSOMF ¶ 36. However, whether Patel admitted that he was aware of the default does not impact the Court's analysis here.

Further, Plaintiff includes a section entitled "Liquidated Damages" in its statement of material facts. PSOMF ¶¶ 41-47. Within this section, Defendant objects to paragraphs 41 through 45, alleging that these paragraphs do "not state facts but rather opinion and conjecture." Def. Resp. to PSOMF ¶¶ 41-45; PSOMF ¶¶ 41-45. The Court agrees that these paragraphs blur the line between facts, opinions, and legal arguments, and thus does not consider them to be facts. *See* L. Civ. R. 56.1 ("Each statement of material facts ... shall not contain legal argument or conclusions of law.").

5

Referring to Section 12.1 of the Agreement (setting liquidated damages to be "the product of $2,000.00 multiplied by the number of guest rooms SKI was authorized to operate at the Facility"), Plaintiff states that "[a]t the time of termination, SKI was operating 101 guest rooms at the Facility. Thus, $2,000.00 multiplied by 101 guest rooms equals $202,000.00." PSOMF ¶ 46. Defendants deny this fact, Def. Resp. to PSOMF ¶ 46, but do not properly cite to the record to support their claim. Therefore, for the reasons stated in note 2, paragraph 46 is deemed admitted.[3] Plaintiff adds the following:

> SWI is seeking $202,000.00 in liquidated damages that became due as a result of the premature termination of the Franchise Agreement. SWI is entitled to interest on this amount calculated at the legal rate of interest of 1.5% per month in the amount of $67,542.36 from December 23, 2016 (30 days from the date of termination) through November 1, 2018 (the date of this submission), which amounts to 678 days. The $67,542.36 figure is calculated by multiplying $202,000.00 by 18% per year, which equals $36,360.00 in interest per year. That amount is then divided by 365 days to equal $99.62 in interest per day. When the per diem interest of $99.62 is multiplied by 678 days, the interest owed equals $67,542.36."

PSOMF ¶ 47. Defendants contest this fact "as it contains improper conclusions," however Defendants fail to cite to the record or provide any explanation for why the fact contains improper conclusions. Def. Resp. to PSOMF ¶ 47. Therefore, the Court considers paragraph 47 admitted.

Similarly, Plaintiff asserts that "SWI has incurred attorneys' fees and costs totaling $12,600.00 and $2,619.00, respectively, in the course of this matter" which it is entitled to collect under section 17.4 of the Agreement. PSOMF ¶ 48. Defendants dispute this fact "as it contains unsubstantiated claims," Def. Resp. to PSOMF ¶ 49,[4] however since Defendants again fail to cite

---

[3] As noted, the Court's December 30, 2019 Order stated that paragraph 46 in particular of Defendants' responsive statement to PSOMF was insufficient. The Order invited Defendants to cure the deficiencies therein, but Defendants did not respond to the Court's Order in any manner.

[4] It appears Defendants mislabeled the paragraphs of their responsive statement by one digit from

to the record or provide any explanation for their claim, the Court deems paragraph 48 admitted. Lastly, Plaintiff claims that "[i]n total, SWI seeks $394,538.56,[5] inclusive of outstanding Recurring Fees, interest, attorneys' fees, and costs." PSOMF ¶ 49. Defendants contest this fact "as it is based on improper calculations" but fail to cite to the record or explain their disagreement, Def. Resp. to PSOMF ¶ 50, so the Court deems paragraph 49 admitted.

### b. Procedural History

On June 22, 2017, Plaintiff filed its Complaint. D.E. 1 ("Compl."). Plaintiff asserted six counts against Defendants regarding the alleged breach of the parties' Franchise Agreement and Guaranty, including demands for (1) "any and all revenue derived as a result of marketing, promoting or selling guest lodging services at the Facility from the inception through the date of termination of the Franchise Agreement"; (2) liquidated damages in the amount of $202,000.00; (3) actual damages "in an amount to be determined at trial"; (4) Recurring Fees in the current amount of $90,561.81 (contract claim); (5) Recurring Fees in the current amount of $90,561.81 (quasi-contract claim); and (6) "judgment against Patel for damages in the amount of all liquidated damages or actual damages and Recurring Fees due and owing under the Franchise Agreement." *Id.* ¶¶ 24-49. Each count also included demands for "interest, attorneys' fees, and costs of suit."

---

paragraph 48 on. *See* Def. Resp. to PSOMF ¶¶ 48-50.

[5] Plaintiff notes in its brief that "[t]here is a typographical/calculation error in the Fenimore Aff. at ¶ 46 [and thus in the PSOMF at ¶ 49], which provides Total Damages" in the amount of $394,538.56, instead of the correct amount of $394,537.84." Pl. Br. at 15 n.1. However, the Court's calculation of Plaintiff's total damages award is $394,537.65.

Furthermore, Plaintiff states in paragraph 49 of the PSOMF that the total damage amount sought is "inclusive of outstanding Recurring Fees, interest, attorneys' fees, and costs." However, based on the Court's calculations, Plaintiff's total damage amount also includes liquidated damages. The Court deems Plaintiff's omission of the words "liquidated damages" in paragraph 49 of the PSOMF to be a typographical error.

7

*Id.*

On November 1, 2018, Plaintiff filed a letter brief requesting leave to file a motion for summary judgment, D.E. 20-1, and a statement of undisputed material facts, D.E. 20. Defendants failed to timely file their opposition. Thereafter, the Court held a telephone conference with counsel, permitting Defendants to file opposition out-of-time. D.E. 24. Defendants submitted a letter two days after the Court's deadline, D.E. 25, and included what the Court construes as a responsive statement of material facts, D.E. 25-1. On February 8, 2019, Plaintiff filed a letter brief noting that Defendants' submission was untimely and addressing deficiencies in Defendants' submission. D.E. 26. On February 11, 2019, the Court entered an Order permitting Plaintiff to file its motion for summary judgment. D.E. 27. In that same Order, the Court addressed deficiencies in Defendants' opposition and ruled that Defendants would not be granted leave to cure such deficiencies.[6] *Id.*

Plaintiff filed a motion for summary judgment as to the second, fourth, fifth, and sixth counts of its Complaint on April 10, 2019. D.E. 28. Defendants did not oppose Plaintiff's motion. Plaintiff indicated that it intended to rely upon, among other documents, a "Brief" and "Affidavit of Suzanne Fenimore." *Id.* at 2. Neither the brief nor affidavit were filed with the Court or attached to the motion as exhibits.

Therefore, the Court issued an Order on December 30, 2019 addressing the deficiencies in both Plaintiff and Defendants' submissions and denying Plaintiff's motion without prejudice for failure to comply with the Court's requirements. D.E. 30. The Court noted three deficiencies: (1)

---

[6] Specifically, since Defendants failed to abide by the requirements of Local Civil Rule 56.1 in its responsive statement and failed to provide a statement of disputed material facts or any supportive documents or affidavits with its opposition letter, D.E. 25, the Court found that Defendants would not be permitted to file such a statement or rely on the certification of Neil Patel and deposition testimony in contesting the summary judgment motion. D.E. 27.

8

Plaintiff claimed to rely on but did not file the Affidavit of Suzanne Fenimore; (2) Plaintiff claimed to rely on but did not file a brief in support of its motion; and (3) Defendants' responsive statement, D.E. 25-1, failed to follow the citation requirements set forth in Local Civil Rule 56.1. *Id.* As explained in the Order, the Court could not adequately resolve Plaintiff's motion given these various deficiencies. *Id.* Therefore, the Court revisited its February 11, 2019 Order and granted both parties one opportunity to cure the deficiencies in their submissions. *Id.* The Court noted that if Plaintiff failed to cure within twenty-one days, the motion would be dismissed with prejudice but if Defendants failed to cure within twenty-one days, the Court would consider Defendants' opposition as filed. *Id.*

On January 14, 2020, Plaintiff cured the deficiencies set forth by the Court and filed both its brief and the Affidavit of Suzanne Fenimore. D.E. 31. Defendant did not respond to the Court's Order.

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at

9

255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS

Plaintiff seeks summary judgment as to Counts Two, Four, Five, and Six of its Complaint. Pl. Br. Count Four states a valid cause of action against SKI for breach of contract. Count Four alleges that "SKI failed to remit certain of the Recurring Fees due and owing under the Franchise

10

Agreement." *Id.* ¶ 40. Plaintiff demands Recurring Fees from SKI in the amount of $90,561.81 in addition to interest, attorneys' fees, and costs of suit. *Id.* ¶ 40.

Under New Jersey law, breach of contract claims require a plaintiff to show that the parties entered into a valid contract, that the defendant did not perform its obligations under the contract, that the plaintiff did perform under the contract, and that the defendant's breach caused damages to the plaintiff. *Red Roof Franchising, LLC v. Patel*, 564 F. App'x 685, 688 (3d Cir. 2014) (citing *Murphy v. Implicito*, 940 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007)). Here, Plaintiff entered into the Agreement with SKI on or about May 11, 2011 for a term of twenty years. PSOMF ¶ 6. The Agreement was a valid contract, satisfying the first element. The Court also does not have any information showing that the Plaintiff did not perform as required under the Agreement.

Section 3.2 of the Agreement required SKI to operate and maintain the facility continuously on a year-round basis, Fenimore Aff., Ex. F, and section 11.2 held that Plaintiff could terminate the Agreement, with notice to SKI, "if SKI (a) discontinued operating the Facility as a Super 8® guest lodging establishment." PSOMF ¶ 21. Sections 7 and 18.3 and Schedule C of the Agreement required SKI to remit to Plaintiff several agreed upon Recurring Fees. PSOMF ¶ 9.

According to PSOMF, SKI closed the Facility from at least February 25, 2016 through November 23, 2016, *id.* ¶¶ 32-35, which violated section 3.2 of the agreement.[7] As a result of SKI's violation of section 3.2 and following multiple letters, Plaintiff terminated the Agreement.

---

[7] In an earlier submission opposing Plaintiff's request to file leave for summary judgment, D.E. 25, Defendants' counsel explained that SKI temporarily closed the Facility because of a burst sprinkler. However, Defendants' counsel failed to mention flood damage in the responsive statement of material facts, D.E. 25-1, and failed to file either a supplemental statement of facts or an opposition brief explaining the circumstances surrounding a flood and its effect on maintaining the Facility. While there is documentary evidence indicating that water damage caused the temporary closing of the Facility, Defendants have not submitted sufficient evidence to raise a genuine dispute of material fact as to Defendants' breach.

*Id.* ¶ 35. Defendants admit that despite requests from Plaintiff, "Defendants have not paid [Plaintiff] the outstanding Recurring Fees or liquidated damages due under the Franchise Agreement … nor have they paid any interest on these items." Def. Resp. to PSOMF ¶ 39. Therefore, the Court finds that SKI failed to perform its obligations under the contract pertaining to paying Recurring Fees, thereby establishing a breach of the Agreement. Further, the Court finds that Plaintiff sustained damages, satisfying the third element. Plaintiff has shown that there are no genuine disputes as to any material fact related to SKI's liability under the Agreement, so Plaintiff is entitled to judgment on Count Four.

Count Five alleges that SKI's failure to pay Plaintiff Recurring Fees due and owing under the Agreement constitutes unjust enrichment. Compl. ¶¶ 44-45. However, "[q]uasi-contract liability will not be imposed by New Jersey courts … if an express contract exists concerning the identical subject matter." *Dandana, LLC v. MBC FZ-LLC*, 507 F. App'x 264, 270 (3d Cir. 2012) (citing *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982)). Since this Court finds that an express contract – the Agreement – exists concerning failure to remit Recurring Fees and grants judgment as a matter of law for Count Four, quasi-contract liability such as unjust enrichment cannot also be imposed under New Jersey law. Therefore, the Court denies Plaintiff's motion as to Count Five.

Count Two alleges that "SKI has failed to pay SWI the liquidated damages as required in section 12.1 of the Franchise Agreement." Compl. ¶ 32. Plaintiff demands liquidated damages from SKI in the amount of $202,000.00 together with interest, attorneys' fees, and costs of suit. *Id.* ¶ 33. However, the Court views Count Two more akin to a request for damages based on breach of the Agreement as opposed to a standalone cause of action. Therefore, the Court denies

Plaintiff's motion as to Count Two. The Court, however, does award Plaintiff liquidated damages as provided for under the Agreement.

Count Six states a valid cause of action against Patel for breach of contract as to the Guaranty. The Court previously noted the elements for a breach of contract. The parties do not dispute that the Guaranty is a valid contract, that Plaintiff performed, or that Patel breached the Guaranty by failing to pay or force SKI to pay Plaintiff outstanding payments due under the Agreement. *Id.* ¶¶ 30, 39. The parties also do not dispute that as a result of Patel's breach, Plaintiff sustained damages in the form of lost payment. In addition, a court must consider the following when the breach concerns a guaranty:

> (1) execution of the guarantee by the guarantor (i.e., that it was the defendant who signed the guarantee); (2) the principal obligation and terms of the guaranty; (3) the lender's reliance on the guaranty in extending monies to the borrower; (4) default by the principal obligator; (5) written demand for payment on the guarantee; (6) failure of the guarantor to pay upon written demand.

*U.S. on Behalf of Small Business Admin. v. DelGuercio*, 818 F. Supp. 725, 726-28 (D.N.J. 1993) (citing 38 C.J.S. Guaranty §§ 8-14 and 38 Am. Jur. 2d ¶ 119).

Patel admits to personally executing the Guaranty. PSOMF ¶ 32. The obligation and terms of the Guaranty are clear in that Patel agreed to "immediately make each payment and perform or cause [SKI] to perform, each unpaid or unperformed obligation of [SKI] under the Agreement." *Id.* ¶ 30. The Guaranty's terms demonstrate that its purpose was to induce Plaintiff to sign the Agreement with SKI. Fenimore Aff., Ex. C. It is undisputed that upon SKI's breach and Plaintiff's termination of the Agreement, Patel failed to pay or force SKI to pay Plaintiff outstanding recurring fees or interest due. PSOMF ¶ 39. Plaintiff demonstrates that it sent Patel a written demand for payment on November 23, 2016, Fenimore Aff., Ex. G, and Patel admits his failure to pay the amounts owed despite receiving the November 2016 termination letter, PSOMF ¶¶ 37-39.

13

Plaintiff has shown that there are no genuine disputes as to any material fact related to Patel's liability under the Guaranty, so Plaintiff is entitled to judgment as a matter of law for Count Six.

## IV.   CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by Plaintiff Super 8 Worldwide Inc. (D.E. 28) is **GRANTED in part and DENIED in part**. The motion is granted as to Counts Four and Six and denied as to Counts Two and Five. An appropriate Order accompanies this Opinion.

Dated:  March 5, 2020

John Michael Vazquez, U.S.D.J.